STATE OF IOWA, Appellee, v. DAN ABBOTT, Appellant.

No. 41885.

June 20, 1933.

Rehearing Denied December 14, 1933.

Charles W. Bowers, Harry L. Tschantz, and John Brodie, for appellant.

Edward L. O'Connor, H. E. Newton, and Carl P. Knox, for appellee.

Evans, J.—On the date named, the Bank of Yale situated in Guthrie county was robbed by two men—a "taller" and a "shorter" one. This occurred a few minutes after 8 a. m. The robbers entered the bank almost simultaneously with the bookkeeper, Hemphill, and the assistant cashier, Hitchens. Two customers, Latimer and Cox, had been in the bank for a few moments just before the entry of the robbers. They saw the two robbers as they entered the bank. These robbers made good their escape at the time. In May, 1932, this defendant was confined in the county jail of Buena Vista county at Storm Lake. He was positively identified as one of the robbers of the Yale Bank by each of the four men already named as being present at the bank when the robbery occurred. The errors relied on for reversal on this appeal relate mainly to alleged restrictions put upon his counsel in the cross-examination of the state's witnesses. The record discloses that defendant's counsel assumed a

broad range in the cross-examination. They purported to follow this course as a means of testing the credibility and the interest and the accuracy of the witnesses in their testimony. The trial court gave them a broad latitude. He also sustained many objections to interrogatories put to the witnesses. A few illustrations will be indicated herein.

 It appeared from the direct testimony of Hemphill that one of the robbers had asked him whether they carried insurance. On cross examination of Hemphill defendant's counsel put to him the following question:

"Q. Did you represent the insurance company that carries the insurance covering your bank?"

The court sustained the objection as not cross-examination. The following questions were put:

"Were you shown any pictures before the time you went to Storm Lake to make the identification?

"Q. Had anything been called to your attention that would indicate the features of this defendant before you were called to Storm Lake to make the identification?

"Did you identify this defendant in the presence of Hi Yackey? A. No. Q. Did you deny the identification of this defendant in the presence of Hi Yackey?"

The foregoing are among the questions to which objection was sustained. The following questions put to the witness Cox were among those to which objection was sustained:

"Q. Did you notify any police office that you could identify him?

"Q. Were you ever interviewed by any police officer up until the time you identified him?

"Q. Have you talked to any police officer concerning this case?

"Q. Had you talked with Danny Peterson before you went there?

"Q. Was there any conversation about identification on your trip to Ft. Madison?

"Q. Have you discussed this matter with any member of the banking association?

"Q. Did Mr. Hitchens pay any part of the expenses of that trip to your knowledge?"

It will be noted that there was nothing in the foregoing questions that bore directly on the question of the identity of the defendant as being connected with the robbery. There was no natural limit to the scope of the kind of examination attempted. Necessarily the court had to exercise its discretion in setting limits to the scope of the examination. There was no abuse of discretion apparent in the record.

██ II. Particular stress is laid upon the admission in evidence of certain exhibits each of which had been contained in an envelope identified in the record as exhibit A. It appeared in evidence that this envelope with its contents disappeared from the bank at the time of the robbery. It was known to be in the bank immediately before the robbery and it was missed therefrom immediately afterwards. No one saw the robbers take possession of it. The contents of the envelope consisted of a land contract and a mortgage and a series of notes. In the latter part of November following, this envelope and its contents were picked up from a ditch at the roadside in Ida county. The finder carried them to a bank at Holstein whereby they later found their way to the Bank at Yale. They were put in evidence on the trial as a part of the plunder of the robbery. Error is assigned upon the ground that there was no proof that the said exhibits were ever in the hands of the alleged robbers. Obviously, the circumstance was not a weighty one. But that was not an objection to its admissibility. The evidence was positive that it did disappear from the bank at the very time of the robbery. The robbers carried a satchel into which they dumped all their quarry indiscriminately. The foregoing is sufficiently illustrative of the character of the evidence upon which the court ruled adversely to the appellant. All the rulings were discretionary and the discretion was fairly exercised in the light of the whole record. We have made a careful examination of the record. We find nothing therein to impeach the fairness of the trial.

The judgment below is accordingly affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.